JOHN P. ELTON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 108403. Promulgated June 16, 1942.

*Ernest W. McCormick, Esq.,* and *John C. Parsons, Esq.,* for the petitioner.

*Charles P. Reilly, Esq.,* and *Martin L. Lore, Esq.,* for the respondent.

OPINION.

SMITH: The principal issue presented for decision is whether the distribution of cash received by the petitioner from the Colonial Trust Co. is taxable in full as an ordinary dividend or is to be treated as a distribution in partial liquidation of the company. If there was a complete cancellation or redemption by the corporation of a part of its stock the distribution was in partial liquidation of the corporation as defined in section 115 (i) of the Revenue Act of 1938, unless the cancellation or redemption was essentially equivalent to the distribution of a taxable dividend within the meaning of section 115 (g). The petitioner contends that the distribution in question was in partial liquidation of the company and resulted in a capital loss to him on the basis of the actual cost of shares of stock which he identifies as having been redeemed. The respondent contends that in the event we find there was a partial liquidation of the corporation the gain or loss must be computed upon the basis of the average cost of all of the petitioner's stock in the trust company and not upon the basis of the actual cost of shares claimed to have been redeemed.

On all of the evidence, we hold that the Colonial Trust Co. did in fact completely redeem and cancel a part of its stock in 1939. The respondent's argument that there was no partial liquidation of the corporation because it did not in any way curtail its business activity and was not in the process of winding up its affairs is without merit. *Commissioner* v. *Quackenbos*, 78 Fed. (2d) 156; *Benjamin R. Britt*, 40 B. T. A. 790. The pertinent facts are that the corporation called in and canceled 5,000 shares, or one-half of its total outstanding stock, for the amount of $1,100,000 in cash, which it charged entirely to its capital and surplus accounts. The amount of $220 per share which was distributed was approximately equivalent to the fair market value of the shares redeemed. This fact distinguishes the instant case from *Lida E. Malone*, 45 B. T. A. 305, in which the amount distributed to the stockholders in cancellation of a part of the stock bore no reasonable relation to the fair market value of the stock redeemed and did not return to those stockholders the proportion of the assets of the corporation to which those shares of stock would entitle them. The distribution plainly comes within

the very letter of the statute and, being in partial liquidation of the corporation, is to be treated as in part or full payment in exchange for the stock in accordance with the provisions of section 115 (c).

We next examine the facts in this case to determine whether section 115 (g) is applicable. The application of this provision of the law in any case depends entirely upon the particular facts. *McGuire* v. *Commissioner*, 84 Fed. (2d) 431. There is no question that the stock in the instant case was all issued for bona fide business reasons. More than one-half of the total paid therefor was paid in 1929. It appeared entirely probable at that time that there would be a substantial increase in the demand for loans from the bank, to meet which additional funds were required. Soon after the stock was issued, however, the business depression struck and in the ensuing years the bank found itself with more capital than it could use profitably. For this reason it decided to return some of it to its stockholders.

The distribution in 1939 was made for sound business reasons and was not a step in an apparent plan to distribute earnings in a manner which would save taxes for the stockholders, as in *Randolph* v. *Commissioner*, 76 Fed. (2d) 472. The stock was not redeemed at the request of stockholders requiring financial assistance, as in *Flanagan* v. *Helvering*, 116 Fed. (2d) 937. It is true that the corporation did have earnings which accrued after February 28, 1913, in excess of the amount distributed, as did the taxpayer in *Goldstein* v. *Commissioner*, 113 Fed. (2d) 363. In the instant case, however, there is adequate and satisfactory explanation for the time and manner of the distribution, whereas such explanation was lacking in the *Goldstein* case. On the facts of this case we hold that the cancellation and redemption of its stock by the Colonial Trust Co. was not essentially equivalent to the distribution of a taxable dividend within the meaning of section 115 (g). *Commissioner* v. *Champion*, 78 Fed. (2d) 513.

The final question is whether gain or loss to the petitioner is to be computed upon the basis of the actual cost of the shares which he designated for redemption or upon the average cost of each share of stock owned by him. If the Colonial Trust Co. had merely elected to retire one-half of its outstanding shares at $220 per share and the petitioner had surrendered the certificates which he did surrender for the cancellation of 105 shares, no question could arise but that the petitioner would be entitled to use the cost of those shares as the basis for computing gain or loss upon the cancellation. We do not think the fact that the company elected at the same time to reduce the par value of the remaining 5,000 shares from $100 to $25 per share and for the issuance therefor of 20,000 shares of the new stock has any bearing upon the question of the right of the

petitioner to designate the certificates which were to be canceled. In *Helvering* v. *Rankin*, 295 U. S. 123, the Supreme Court held that a person having a margin account with a broker and making purchases and sales might designate to the broker the shares of stock which he wished sold as those purchased on a certain date. This was held to be a sufficient identification of the shares to warrant the computation of gain or loss upon the cost of the shares thus identified. The Court specifically pointed out that certificates for shares provide the ordinary means of identification but that that was not the only possible means. In this proceeding the certificates to be canceled were specifically designated. We see no reason why the petitioner should not be permitted to use the cost of the 105 shares covered by the certificates designated for redemption as the basis for the computation of the gain or loss upon the redemption of such shares.

*Decision will be entered under Rule 50.*